**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

**2021-2347**

---

**STEPHEN THALER,**
*Plaintiff-Appellant*,

**v.**

**ANDREW HIRSHFELD, Performing the Functions and Duties of the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendants-Appellees*.

---

Appeal from United States District Court for the Eastern District of Virginia in Case No. 1:20cv903, Judge Leonie M. Brinkema

---

BRIEF FOR THE DEFENDANTS-APPELLEES – ANDREW HIRSHFELD AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE

---


FARHEENA Y. RASHEED
Acting Solicitor

MEREDITH H. SCHOENFELD
PETER J. SAWERT
Associate Solicitors
United States Patent and
Trademark Office

JESSICA D. ABER
United States Attorney

DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3891

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ iii

STATEMENT OF RELATED CASES ........ 1

STATEMENT OF JURISDICTION ........ 2

STATEMENT OF THE ISSUE ........ 2

STATEMENT OF THE CASE ........ 2

I. THE STATUTORY DEFINITION OF "INVENTOR" ........ 3

II. ADMINISTRATIVE PROCEEDINGS BEFORE THE USPTO ........ 5

A. THALER'S PATENT APPLICATIONS ........ 5

B. USPTO'S PETITION DECISIONS ........ 8

III. DISTRICT COURT PROCEEDINGS ........ 11

SUMMARY OF THE ARGUMENT ........ 15

STANDARD OF REVIEW ........ 17

ARGUMENT ........ 18

I. THE DISTRICT COURT CORRECTLY CONCLUDED THAT THE PLAIN LANGUAGE OF THE PATENT ACT EQUATES "INVENTOR" WITH A "HUMAN BEING" OR "NATURAL PERSON" ........ 18

A. THE PLAIN MEANING OF "INDIVIDUAL" IS "HUMAN BEING" ........ 19

B. THALER'S NON-TEXTUAL POLICY ARGUMENTS CANNOT OVERCOME THE PLAIN MEANING OF THE TERM "INDIVIDUAL" ........ 29

II. THE USPTO'S STATUTORY CONSTRUCTION IS ALTERNATIVELY ENTITLED TO SKIDMORE DEFERENCE ........ 35

CONCLUSION ........ 39

RULE 32(g) CERTIFICATE OF COMPLIANCE ........ 40

## TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Animal Legal Defense Fund v. Dep't of Agriculture*,
933 F.3d 1088 (9th Cir. 2019)........................................................ 27-28

*Ashford Univ., LLC v. Secretary of Veterans Affairs*,
951 F.3d 1332 (Fed. Cir. 2020).........................................................25

*Astrue v. Ratcliff*,
560 U.S. 586 (2010) .......................................................................22

*B.F. Goodrich Co. v. United States*,
94 F.3d 1545 (Fed. Cir. 1996) ........................................................22

*Babb v. Wilkie*,
140 S. Ct. 1168 (2020) ..................................................................23

*BedRoc Ltd., LLC v. United States*,
541 U.S. 176 (2004) .......................................................................18

*Beech Aircraft Corp. v. EDO Corp.*,
990 F.2d 1237 (Fed. Cir. 1993) ..............................................9, 15, 26

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989) .......................................................................34

*Bostock v. Clayton County*,
140 S. Ct. 1731 (2020) ..................................................................21

*Cathedral Candle Co. v. ITC*,
400 F.3d 1352 (Fed. Cir. 2005) .......................................................36

*Centech Grp. v. United States*,
554 F.3d 1029 (Fed. Cir. 2009) .......................................................18

*Chevron USA, Inc. v. Nat. Res. Def. Coun., Inc.*,
467 U.S. 837 (1984) .......................................................................36

*Chudik v. Hirshfeld*,
987 F.3d 1033 (Fed. Cir. 2021) .......... 36

*Connecticut Nat. Bank v. Germain*,
503 U.S. 249, 253-54 (1992) .......... 18

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980) .......... 31-32

*Eldred v. Ashcroft*,
537 U.S. 186 .......... 33

*Figueroa v. United States*,
466 F.3d 1023 (Fed. Cir. 2006) .......... 33

*Fisons PLC v. Quigg*,
876 F.2d 99 (Fed. Cir. 1989) .......... 15, 31

*Friends of Earth, Inc. v. EPA*,
446 F.3d 140 (D.C. Cir. 2006) .......... 31

*Glaxo Ops. UK Ltd. v. Quigg*,
894 F.2d 392, 399-400 (Fed. Cir. 1990) .......... 11

*Graham v. John Deere Co.*,
383 U.S. 1 (1966) .......... 32

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) .......... 25

*Halliburton, Inc. v. Erica P. John Fund, Inc.*,
573 U.S. 258, 277 (2014) .......... 35

*Horner v. Jeffrey*,
823 F.2d 1521 (Fed. Cir. 1987) .......... 18

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999) .......... 2

*Jarecki v. G.D. Searle & Co.*,
367 U.S. 303, 307 (1961) .......................................................................25

*Kennedy v. Hazelton*,
128 U.S. 667 (1888) ...............................................................................3

*Kimble v. Marvel Entm't, LLC*,
576 U.S. 446 (2015) ...............................................................................35

*Mohamad v. Palestinian Auth.*,
566 U.S. 449 (2012) ............................................................................ *passim*

*Ngiraingas v. Sanchez*,
495 U.S. 182 (1990) ...............................................................................23

*Parker v. Flook*,
437 U.S. 584, 596 (1978) .......................................................................32

*Russello v. United States*,
464 U.S. 16, 23 (1983) ...........................................................................24

*Sandoz Inc. v. Amgen Inc.*,
137 S. Ct. 1664 (2017) ...........................................................................31

*Shoshone Indian Tribe v. United States*,
364 F.3d 1339 (Fed. Cir. 2004) ...............................................................13

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) ....................................................................13, 35, 36

*Univ. of Utah v. Max-Planck-Gesellschaft*,
734 F.3d 1315 (Fed. Cir. 2013) ........................................................ *passim*

*Voter Verified, Inc. v. Premier Elec. Solutions, Inc.*,
698 F.3d 1374 (Fed. Cir. 2012) ...............................................................17

**STATUTES**

1 U.S.C. § 1 ...........................................................................................21

5 U.S.C. § 552(a)(6)(E)(v)(I) ........ 27

5 U.S.C. § 706 ........ 18

17 U.S.C. § 101 ........ 22

28 U.S.C. § 1291 ........ 2

28 U.S.C. § 1295 ........ 2

28 U.S.C. § 1331 ........ 2

28 U.S.C. § 1338(a) ........ 2

35 U.S.C. § 100 ........ 10, 13

35 U.S.C. § 100(f) ........ 4, 20, 26

35 U.S.C. § 100(g) ........ 4, 20, 26

35 U.S.C. § 101 ........ 23

35 U.S.C. § 111(a) ........ 20

35 U.S.C. § 111(a)(2)(C) ........ 4

35 U.S.C. § 115 ........ 10, 13

35 U.S.C. § 115(a) ........ 4, 20

35 U.S.C. § 115(b)(2) ........ 4, 20, 24

35 U.S.C. § 115(d)(1) ........ 5

35 U.S.C. § 115(d)(2) ........ 5

35 U.S.C. § 115(d)(3) ........ 5

35 U.S.C. § 271 ........ 23, 24

35 U.S.C. § 271(h) .......... 23

35 U.S.C. § 371 .......... 20

**REGULATIONS**

37 C.F.R. § 1.181 .......... 9

**OTHER**

H.R. RPT. 112-98, at 68-69 (June 1, 2011) .......... 3

U.S. CONST. Art. I, § 8, cl. 8 .......... 3

## STATEMENT OF RELATED CASES

There are no other appeals arising from the District Court action below. The United States Patent and Trademark Office ("USPTO") is not aware of any other cases in this Court that may be directly affected by the outcome of this appeal.

## STATEMENT OF JURISDICTION

The District Court possessed subject matter jurisdiction over Plaintiff-Appellant Stephen Thaler's civil action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

This Court possesses jurisdiction over this appeal, pursuant to 28 U.S.C. §§ 1291 and 1295, from the final order entering judgment in favor of the USPTO.

## STATEMENT OF THE ISSUE

Whether the District Court correctly concluded that an artificial intelligence device comprised solely of source code cannot qualify as an "inventor" under the Patent Act, where the plain statutory language specifically defines "inventor" to be an "individual" and refers to an "inventor" using personal pronouns.

## STATEMENT OF THE CASE

The instant appeal exclusively concerns the proper statutory construction of the term "inventor" within the Patent Act. Consistent with the Supreme Court's repeated mandate that the actual language that Congress promulgated into law is of paramount importance in statutory construction, *see Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999), this statement will begin by identifying the precise wording of that statutory text before discussing the particularized factual

circumstances giving rise to this appeal.

## I. THE STATUTORY DEFINITION OF "INVENTOR"

The concept of inventorship has been a significant part of patent law for more than a century. *See, e.g.*, *Kennedy v. Hazelton*, 128 U.S. 667, 672 (1888). Although Congress included this fundamental principle in its initial modern codification of the Patent Act in 1952, it did not provide an explicit definition of the term "inventor."

Congress remedied that omission in 2011, when it promulgated the Leahy-Smith America Invents Act ("AIA"), a statute that Congress itself described as aiming "to ensure that the patent system in the twenty-first century reflects the constitutional imperative" of the Patent and Copyright Clause (*see* U.S. CONST. Art. I, § 8, cl. 8) to further innovation and "to correct flaws in the system" that Congress had identified. H.R. RPT. 112-98, at 68-69 (June 1, 2011). The AIA formally amended the Patent Act to provide an explicit statutory definition for the term "inventor":

> The term "inventor" means the *individual* or, if a joint invention, the *individuals* collectively who invented or discovered the subject matter of the invention.

35 U.S.C. § 100(f) (emphasis added). The AIA also added a consistent definition for the term "joint inventor." *See id.* § 100(g) (defining term to "mean any one of the *individuals* who invented or discovered the subject matter of a joint invention" (emphasis added)).

Congress also incorporated its new specific statutory definition of "inventor" into the statutory provisions governing the practical process of applying for patent protection. To this end, Congress has required that one who seeks a patent on a particular invention must file a written application with the USPTO, which must include "the name of the inventor for any invention" and "an oath or declaration" from "each *individual* who is the inventor or a joint inventor of [the] claimed invention." 35 U.S.C. § 115(a) (emphasis added); *see also id.* § 111(a)(2)(C). That "oath or declaration" must attest, *inter alia*, that the "*individual*" in question "believes *himself or herself* to be the original inventor or an original joint inventor of [the] claimed invention." *See id.* § 115(b)(2) (emphasis added).

The Patent Act does provide a slight exception to this formal "oath or declaration" mandate, allowing an applicant to submit a "substitute statement" to the USPTO "in lieu of" of the oath or declaration that is typically required from the

inventor. *See id.* § 115(d)(1). But once again, the express statutory language codifying this exception tracks the Patent Act's definition of "inventor":

> A substitute statement under paragraph (1) is permitted with respect to *any individual who*—
>
> (A) is unable to file the oath or declaration under subsection (a) because *the individual*—
>
> (i) is deceased;
>
> (ii) is under legal incapacity; or
>
> (iii) cannot be found or reached after diligent effort; or
>
> (B) is under an obligation to assign the invention but has refused to make the oath or declaration required under subsection (a).

*Id.* § 115(d)(2) (emphasis added). And similarly, the statute requires that any "substitute statement" must "identify *the individual* with respect to whom the statement applies" as well as the circumstances triggering the exception to the oath or declaration requirement. *Id.* § 115(d)(3) (emphasis added).

## II. ADMINISTRATIVE PROCEEDINGS BEFORE THE USPTO

### A. THALER'S PATENT APPLICATIONS

The instant action concerns two patent applications that Thaler filed with the USPTO, which were assigned U.S. Application Nos. 16/524,350 and 16/524,532 (collectively, "the Applications"). Because the administrative proceedings that

occurred with respect to the Applications were identical, the following discussion treats the Applications collectively.

Thaler filed the Applications with the USPTO on July 29, 2019. Appx139-234; 422-537. In an Application Data Sheet accompanying the Applications, Thaler identified the inventor's "given name" as "DABUS," and additionally stated that the "invention [was] generated by artificial intelligence." Appx148; 437. Thaler identified his own mailing address as the "mailing address of inventor." *Id.*

In a written "Statement on Inventorship" that he included with the Applications, Appx198-203; 483-488, Thaler specifically confirmed that DABUS was, in fact, not a human being (or natural person); rather, DABUS was "a particular type of connectionist artificial intelligence" known as a "Creativity Machine." Appx199; 484.[1] Nevertheless, Thaler argued that because Congress had not "seriously consider[ed] autonomous machine invention" before limiting "inventorship to individuals," the USPTO should define the term "inventor" to

[1]During oral argument before the District Court, Thaler's counsel specifically stated that DABUS was not a physical object or entity; instead, DABUS was "a collection of source code or programming and a software program." R.41, at 3.

include a machine. Thaler also offered his subjective view that defining the term "inventor" to include a machine would "incentivize innovation." Appx200-201; 485-486.

Because DABUS – given its status as a non-human being – could not execute the necessary oath or declaration that the Patent Act requires of the inventor, Thaler included his own statement with the Applications as a substitute. Appx164-165; 449-450. That statement provided that the "inventor," DABUS, was "under legal incapacity in view of the fact that the sole inventor is a Creativity Machine (*i.e.*, an artificial intelligence), with no legal personality or capability to execute this substitute statement." Appx165; 450.

Finally, Thaler included with the Applications a document through which DABUS had ostensibly assigned all intellectual property rights in the claimed invention to plaintiff. Appx159; 448. That assignment document provided as follows, in pertinent part:

> DABUS, the Creativity machine that has produced the below-detailed invention, as the sole inventor (represented in this Assignment by its owner, Stephen L. Thaler, hereinafter called the "Assignor"), hereby assigns and transfers to:
>
> Stephen L. Thaler
> [Address Omitted]

> (hereinafter called the "Assignee"), its successors, assignees, nominees, or other legal representatives, the Assignor's entire right, title, and interest, including, but not limited to, copyrights, trade secrets, trademarks and associated good will and patent rights in the Invention and the registrations to the invention . . . .

*Id.* The assignment document ended with the following:

> In view of the fact that the sole inventor is a Creativity Machine, with no legal personality or capability to execute said assignment, and in view of the fact that the assignee is the owner of said Creativity Machine, this Assignment is considered enforceable without an explicit execution by the inventor. Rather, the owner of DABUS, the Creativity Machine, is signing this Assignment on its behalf.
>
> Similarly, DABUS, being a machine and having no legal personality, does not have the capability to receive any consideration, and therefore, Stephen L. Thaler, as its owner/representative, acknowledges the receipt and sufficiency of good and valuable consideration for this assignment.
>
> Signed and sealed this 23rd day of July 2019,
>
> Stephen L. Thaler
> Stephen L. Thaler
> On behalf of DABUS,
> Assignor
>
> Stephen L. Thaler
> Stephen L. Thaler
> Assignee

*Id.*

### B. USPTO's Petition Decisions

After its initial review of the Applications, on August 8, 2019, the USPTO issued to Thaler a "Notice to File Missing Parts of Non Provisional Application." Appx235-236. In that notice, the USPTO provided Thaler two months to submit proper information regarding inventorship because the "application data sheet or inventor's oath or declaration does not identify each inventor or his or her legal

name." Appx235-236. Thaler did not comply with the USPTO's directive.

1. Instead, on August 29, 2019, Thaler filed a petition with the USPTO Director pursuant to 37 C.F.R. § 1.181. Appx249-254; 532-537. Thaler's petition asked the USPTO to vacate its "Notice to File Missing Parts," and in support of this request, essentially reiterated the exact terms of the "Statement of Inventorship" that he had submitted with the Applications. *Id.*

The USPTO issued a decision on Thaler's petition on December 17, 2019. Appx269-271; 548-550. In its decision, the USPTO primarily explained that the explicit statutory language that Congress has used to define the term "inventor" – *e.g.*, "individual" and "himself or herself" – were uniquely trained on natural human beings. Appx270; 549. The USPTO also noted that this Court had twice held, even before the precise amendments to the Patent Act occasioned by the AIA, that an inventor could only be a natural person. Appx271; 550 (quoting *Univ. of Utah v. Max-Planck-Gesellschaft*, 734 F.3d 1315, 1323 (Fed. Cir. 2013); *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993)). And thus, "[b]ecause a machine does not qualify as an inventor," the USPTO concluded that it had "properly issued the Notice . . . noting the inventor was not identified by his or her legal name." *Id.*

2.a. On January 20, 2020, Thaler sought reconsideration of the USPTO's earlier petition decision. Appx273-284; 552-563. That request did not identify any contrary statutory provisions within the Patent Act or Federal Circuit authority to support Thaler's desired definition of "inventor." *Id.* Instead, Thaler reiterated (almost verbatim) the same policy rationales found in his "Statement on Inventorship" and original petition. *Id*.

b. On April 22, 2020, USPTO denied Thaler's request for reconsideration in a detailed and comprehensive final decision – the same decision over which Thaler sought Article III judicial review in the District Court. Appx344-351; 595-602.

First and foremost, the USPTO again primarily pointed to the explicit statutory language that Congress utilized to define "inventor" in the Patent Act – including, *inter alia,* "individual" and "himself or herself" within 35 U.S.C. §§ 100; 115. Appx347; 598. In particular, the USPTO cited to the precise language Congress included within § 115, which refers to individuals and uses pronouns specific to natural persons – "himself" and "herself" – when referring to the "individual" who believes himself or herself to be the original joint inventor of a claimed invention in the application. *Id.* As such, the USPTO concluded that "interpreting 'inventor' broadly to encompass machines would contradict the plain

reading of the patent statutes that refer to persons and individuals." *Id.*

The USPTO additionally reiterated that this Court had held – both before and after Congress amended the Patent Act through the AIA – "that the patent laws require that an inventor be a natural person." Appx345-348; 598-599. In this respect, the agency rejected Thaler's position that this binding decisional authority could only apply to the limited question of whether *corporate entities* could be an inventor under the relevant statute. *Id*.

Finally, the USPTO concluded that, whatever their putative merit, plaintiff's asserted policy considerations were simply irrelevant under Federal Circuit authority because they could "not overcome the plain language of the patent laws as passed by the Congress and as interpreted by the courts." Appx350; 600-601 (citing *Glaxo Ops. UK Ltd. v. Quigg*, 894 F.2d 392, 399-400s (Fed. Cir. 1990)).

## III. DISTRICT COURT PROCEEDINGS

a. Thaler then commenced this civil action by filing a complaint in the United States District Court for the Eastern District of Virginia on August 6, 2020. Appx100; 105-129. That complaint asserted a single cause of action under the Administrative Procedure Act ("APA"), seeking judicial review over the USPTO's final decisions on the petitions that Thaler filed with respect to both of the

Applications. Appx120. As relief, Thaler sought, *inter alia*, an order compelling the USPTO to "reinstate the Applications" and a declaration that a "patent application for an AI-generated invention should not be rejected on the basis that no natural person is identified as an inventor." Appx100-121.

b. Insofar as Thaler's challenge was governed by APA standards, the parties agreed to have the District Court adjudicate the challenge based solely on the administrative record of proceedings before the USPTO, and pursuant to cross-motions for summary judgment. Appx101. On September 2, 2021, after full briefing and oral argument on these cross-motions, Appx101-103, the District Court issued a memorandum opinion and order that granted the USPTO's motion for summary judgment, and denied Thaler's motion for the same relief, Appx1-20. In short, the District Court concluded as follows:

> Before the Court are the parties' cross-motions for summary judgment, which address the core issue – can an artificial intelligence machine be an "inventor" under the Patent Act? Based on the plain statutory language of the Patent Act and Federal Circuit authority, the clear answer is no.

Appx3.

The District Court expanded on its reasoning over the course of its detailed and comprehensive memorandum opinion. Initially, the District Court explained that the USPTO's petition decisions were "carefully considered[,] consistent with

the Patent Act's language and the caselaw[,] . . . [and] also explained why [Thaler's] policy arguments as to the effects of the agency's interpretation were rejected." Appx11. For these reasons, the District Court concluded that "the USPTO's interpretation that an 'inventor' must be a natural person [was] entitled to deference" under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Appx11. But "[e]ven if no deference were due," the District Court explained, the result would remain the same because "the USPTO's conclusion [was] correct under the law." *Id.*

In this respect, the District Court noted that because "[t]he question of whether the Patent Act requires that an 'inventor' be a human being is a question of statutory construction," Supreme Court authority mandated that "the plain language of the statute controls." Appx9-10 (citing *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1345 (Fed. Cir. 2004)). The District Court proceeded to quote extensively from the statutory language found in 35 U.S.C. §§ 100 and 115, recognizing that Congress repeatedly utilized the term "individual" either to define "inventor" expressly or to refer to an "inventor." Appx10-11. Accordingly, the District Court concluded, "the issue of whether an artificial intelligence machine can be an 'inventor' turns on the plain meaning of the

statutory term 'individual.'" Appx11.

Given the specific statutory term that it was required to interpret, the District Court turned to *Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012), in which the Supreme Court held that the plain meaning of the statutory term "individual" referred to a "natural person[]." Appx11 (quoting *Mohamad*, 566 U.S. at 453-54). The District Court determined that each of the interpretive tools that the *Mohamad* Court utilized to obtain the plain meaning for "individual" applied with equal force to the Patent Act; indeed, other provisions of the Patent Act only *fortified* the construction of "individual" to mean a "natural person." Appx14-16. On this latter point, applying the *nocitur a sociis* canon of statutory construction (*i.e.*, that a word is known by the company it keeps), the District Court noted that Congress expressly modified the term "individual" with the personal pronouns "himself or herself," and thus held that "Congress was clearly referencing a natural person." Appx15. Although the District Court acknowledged that Congress *could* deviate from this plain meaning of "individual," the *Mohamad* Court had "held that there must be '*some* indication' that Congress intended a particular provision to be one of the 'rare statute[s]' that contains a different meaning for the term 'individual.' Appx17 (quoting *Mohamad*, 566 U.S. at 455 (emphasis in original)). Not only

had Thaler failed to provide *any* indication that Congress intended a different meaning to the term, but his "position that" it was the *USPTO* that "must 'provide . . . evidence that Congress intended to prohibit patents on AI-[g]enerated [i]nventions' ha[d] the burden exactly backwards." *Id.*

The District Court next recognized this Court's "consistent holdings that under current patent law 'inventors must be natural persons.'" Appx16 (quoting *Max-Planck*, 734 F.3d at 1323; *Beech*, 990 F.2d at 1248).

And finally, the District Court rejected Thaler's resort to policy arguments to support his preferred, and more expansive, definition of the term "individual" within the Patent Act. Appx17-20. In this respect, the District Court explained that "[t]he Supreme Court and [this Court] have explicitly held that policy considerations cannot overcome a statute's plain language, and that 'matters of policy are for Congress, not the courts, to decide." Appx.17-18 (quoting *Fisons PLC v. Quigg*, 876 F.2d 99, 101 (Fed. Cir. 1989)).

This appeal ensued.

## SUMMARY OF THE ARGUMENT

The instant appeal concerns a straightforward question of statutory construction: can source code be an "inventor" under the Patent Act? Answering

that question in the negative, both the USPTO and the District Court correctly focused on the plain language of the relevant Patent Act provisions, as mandated by decades of authority from both the Supreme Court and this Court. Congress amended the Patent Act in 2011 to include both an explicit definition for the term "inventor" that equated an "inventor" with an "individual" and, in a subsequent statutory provision, a reference to that "individual" using personal pronouns. Applying the Supreme Court's recent holding on the plain statutory meaning of the term "individual," and recognizing that Thaler could point to nothing – within the text of the Patent Act or otherwise – demonstrating that Congress had intended a different meaning for the term, the District Court correctly concluded that the plain language of the Patent Act required an "inventor" to be a "natural person" (i.e., "human being"). Unsurprisingly, this Court's precedent has similarly held that an "inventor" seeking patent protection must be a "natural person."

Under well-settled Supreme Court authority, it is here that any exercise in statutory construction must "end." Nevertheless, Thaler now asks this Court to ignore this plain statutory language and discard binding Supreme Court precedent, based solely on his own assessment of the intellectual property policy that the United States should adopt with respect to artificial intelligence. But the Supreme

Court and this Court have repeatedly held that such policy assessments – whatever their ultimate merit – have no place in statutory construction, belonging instead in the halls of Congress. Similarly, Thaler's arguments about the decisions on this issue by the courts or patent agencies of other countries (many of which have similarly concluded that artificial intelligence does not qualify as an "inventor") have no bearing on the construction of the terms that Congress used in the Patent Act. Put simply, Thaler seeks to rewrite the Patent Act, which is beyond the authority of either this Court or the USPTO.

The plain language Congress chose to incorporate in the Patent Act unequivocally resolves this question – only a human being can be an "inventor." This Court should therefore affirm.

## STANDARD OF REVIEW

Although this Court reviews the District Court's grant of summary judgment *de novo*, it does so by "applying the same standard as the district court." *See Voter Verified, Inc. v. Premier Elec. Solutions, Inc.*, 698 F.3d 1374, 1379 (Fed. Cir. 2012). Accordingly, the merits of Thaler's challenge to the USPTO's petition decisions are governed by those standards recited by the Administrative Procedure Act ("APA"), which only allows an Article III court to "set aside" an agency

decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706; *see also Centech Grp. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).

## ARGUMENT

### I. THE DISTRICT COURT CORRECTLY CONCLUDED THAT THE PLAIN LANGUAGE OF THE PATENT ACT EQUATES "INVENTOR" WITH A "HUMAN BEING" OR "NATURAL PERSON"

There can be little doubt that the sole issue presented in this action – *i.e.*, whether the necessary "inventor" of subject-matter sought to be patented must be a human being – is a question of statutory construction. Contrary to Thaler's suggestion that this Court can simply "set[] aside [the] plain language" of a statute, *Br.*, at 20, the Supreme Court has been crystal clear that courts (as well as executive agencies) must look to the plain language of the relevant statute:

> The preeminent canon of statutory interpretation requires us to "presume that [the] legislature says in a statute what it means and means in a statute what it says there." Thus, *our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.*

*BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (emphasis added) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992)); *see also Horner v. Jeffrey*, 823 F.2d 1521, 1532 (Fed. Cir. 1987) ("This Court cannot

ignore and thus give implicit judicial approval to a statutory interpretation that is contrary to the plain language of the statute.”).

Despite this decisional authority, Thaler’s opening brief in this Court barely mentions the express language that Congress used in the Patent Act, whether in explicitly defining “inventor” or otherwise; instead, Thaler simply groups certain statutory terms into a single sentence and argues that these terms can be interpreted in any number of ways to satisfy one’s desired policy outcome. *Br.*, at 17. There is a good reason that Thaler avoids searching review of the Patent Act’s plain language – that language unequivocally leads to the conclusion that only a natural person can be an “inventor.” And as such, this Court has held that an inventor must be a “natural person.” *See, e.g.*, *Max-Planck*, 734 F.3d at 1323.

### A. THE PLAIN MEANING OF “INDIVIDUAL” IS “HUMAN BEING”

Congress explicitly defined the terms “inventor” and “joint inventor” within the Patent Act, and both definitions unequivocally reference an “individual” or “individuals”:

> (f) The term “inventor” means the *individual* or, if a joint invention, the *individuals* collectively who invented or discovered the subject matter of the invention.
>
> (g) The terms “joint inventor” and “coinventor” mean any 1 of the *individuals* who invented or discovered the subject matter of a joint

invention.

35 U.S.C. §§ 100(f)-(g) (emphasis added).[2] Congress used the same statutory term – "individual" – in the other significant provision of the Patent Act that references an "inventor":

> An application for patent that is filed under section 111(a) or commences the national stage under section 371 shall include, or be amended to include, the name of the inventor for any invention claimed in the application. Except as otherwise provided in this section, each *individual* who is the inventor or a joint inventor of a claimed invention in an application for patent shall execute an oath or declaration in connection with the application.

*Id.* § 115(a) (emphasis added); *see also id.* § 115(b)(2) (providing that "[a]n oath or declaration . . . shall contain statements that . . . such *individual* believes *himself or herself* to be the original inventor or an original joint inventor of a claimed invention in the application" (emphasis added)). And thus, as the District Court correctly recognized, Appx15, the issue before this Court turns on the plain meaning of the statutory term "individual."

1. Courts, including the Supreme Court, have held that Congress's use of the

[2] Because Congress thus placed a specific definition for "inventor" into the Patent Act in 2011, it is incorrect for Thaler to suggest that the USPTO – and this Court – are free to interpret "inventor" in the abstract. *Br.*, at 20 ("[T]he term 'Inventors' should be afforded the flexibility needed to effectuate constitutional purposes.").

term "individual" in a given statute denotes a "human being," as opposed to other things. The Supreme Court recently conducted this very statutory construction analysis with respect to Congress's use of "individual" in the Torture Victim Protection Act ("TVPA"). *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453-61 (2012). *Mohamad* provides a point-by-point application of the canons of statutory construction through which Congress's identical use of the term "individual" in the Patent Act must be viewed.

*First*, the *Mohamad* Court recognized that because the TVPA – like the Patent Act – "does not define the term 'individual,' we look first to the word's ordinary meaning." *Id.* at 454. Quoting from several well-known dictionaries, the Court held that when used "[a]s a noun, 'individual' ordinarily means '[a] human being, a person.'" *Id.* (quoting 7 OXFORD ENGLISH DICTIONARY 880 (2d ed. 1989)). *Second,* the Court recognized that in "everyday parlance," English speakers use "individual" to "refer[] unmistakably to a natural person." *Id.*; *see also Bostock v. Clayton County*, 140 S. Ct. 1731, 1750 (2020). *Third*, the Court noted that the Dictionary Act, *see* 1 U.S.C. § 1, provides that the legislative use of the term "individual" denotes something separate and apart from non-human

beings. *See Mohamad*, 566 U.S. at 454.[3]

Each of these interpretative points is equally applicable to the Patent Act as it is to the TVPA. *First*, the Patent Act undoubtedly uses the term "individual" as a noun, and thus, as in *Mohamad*, it should be construed consistent with its plain meaning – *i.e.*, "a human being." *Second*, just as the *Mohamad* Court noted that "no one . . . refers in normal parlance to an organization as an 'individual,'" *Mohamad*, 566 U.S. at 454, it is equally true that "no one . . . refers in normal parlance" to a machine (or a collection of source code) as an "individual." *Third*, the entire point of the Dictionary Act is that it applies to *all* congressional

[3]Thaler cites to a provision of the Copyright Act in connection with this interpretive point. *Br.*, at 20 (reasoning that "under the work-for-hire doctrine" recognized in 17 U.S.C. § 101, "a corporation can be considered a legal author for copyright purposes"). Leaving aside that the Copyright Act does not purport to define the term "inventor" (or even "author") – let alone define them for purposes of patent protection – this statutory provision actually *supports* the District Court's construction of the Patent Act. As the Supreme Court explained, "federal statutes routinely distinguish between an 'individual' and an organizational entity of some kind." *Mohamad*, 566 U.S. at 455. And in the Copyright Act, Congress legislated in a similar fashion, defining the term "proprietor" to be "an *individual*, corporation, partnership, *or* other entity." 17 U.S.C. § 101 (emphasis added). Thaler's own cited statutory provision thus proves that "Congress knows how to" differentiate between natural persons and other things through the use of the term "individual" "where it desires to do so." *Astrue v. Ratcliff*, 560 U.S. 586, 595 (2010); *see also B.F. Goodrich Co. v. United States*, 94 F.3d 1545, 1550 (Fed. Cir. 1996) ("Congress knows how to adopt such a standard when it so desires.").

enactments, *see Ngiraingas v. Sanchez*, 495 U.S. 182, 190 (1990), including the Patent Act.

To be sure, the *Mohamad* Court explained that Congress "remains free . . . to give" the term "individual" "a broader or different meaning." *Mohamad*, 566 U.S. 455. But in order for a court to adopt such a "broader" construction, Congress must have provided some affirmative "indication [that it] intended such a result." *Id*. Neither before the District Court nor in his opening brief before this Court has Thaler pointed to any textual evidence that Congress intended a "broader" meaning to the term "individual."[4] Accordingly, as the District Court correctly held below,

[4]In his brief before this Court, Thaler points to the term "whoever" in 35 U.S.C. § 101, explaining that the Patent Act similarly utilizes that term in another statutory provision regarding patent infringement liability, *see id.* § 271, and courts have allowed corporate entities to be held liable for infringement. *Br.*, at 19. First, the plain language of the Patent Act defines "inventor" using the term "individual," not "whoever," thus rendering the latter term of far less interpretative value. But in any event, Congress has confirmed that its use of "whoever" *in § 271* was intended to include *both* natural persons and non-natural entities:

> *As used in this section*, the term "whoever" includes any State, any instrumentality of a State, and any officer or employee of a state acting in his official capacity.

35 U.S.C. § 271(h). No such statutory language is included in § 101. *See, e.g.*, *Babb v. Wilkie*, 140 S. Ct. 1168, 1171 (2020) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely

Thaler's position that the "USPTO has provided no evidence, case law, statutory law, or any other authority that would indicate that Congress intended to prohibit patents on AI-generated inventions," *Br.*, at 20, has "the burden exactly backwards," Appx17.

Thaler cannot meet his burden because, as with the statute at issue in *Mohamad*, "the statutory context" within the Patent Act "strengthens – not undermines – the conclusion that Congress intended" only to reference "natural persons" through the term "individual" in its statutory definition of "inventor." As stated above, Congress provided that in executing the oath or declaration that must accompany a patent application, the inventor must testify that "such *individual* believes ***himself or herself*** to be the original inventor or an original joint inventor of a claimed invention in the application." 35 U.S.C. § 115(b)(2) (emphasis added). By using personal pronouns in the same statutory provision – indeed, in adjacent terms that serve to modify the term "individual" – Congress only strengthened the conclusion that it was referring to a "human being" in

---

in the disparate inclusion or exclusion." (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). And consistent with the above, Congress used a personal pronoun in § 271 only with respect to the one human being referenced in the statutory provision.

referencing an "individual." *See* WEBSTER'S NEW INT'L DICTIONARY 571 (defining "himself" as a pronoun meaning "that identical male one"); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (recognizing that courts "rely" on the doctrine known as *noscitur a sociis*, meaning that a "word is known by the company it keeps," "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress'" (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961))).[5]

2. It is thus hardly surprising that this Court has, in a published decision, construed Congress's use of the term "individual" in the Patent Act to mean that "inventors must be natural persons." *Max-Planck*, 734 F.3d at 1323; *see also*

---

[5]The Patent Act thus stands in stark contrast to the veterans' benefit statute at issue in *Ashford Univ., LLC v. Secretary of Veterans Affairs*, 951 F.3d 1332, 1342 (Fed. Cir. 2020). There, this Court held that Congress *had* deviated from the ordinary meaning of "individual" in delineating those who could appeal an adverse benefits determination to the Board of Veterans Appeals. *See id.* at 1342-43. More specifically, this Court concluded that Congress had intended a broader meaning for "individual" – to include corporate entities – because of the design of the overall statutory scheme, and a contrary result would violate the well-settled presumption in favor of judicial review. *See id.* As stated below, this Court has already held that the Patent Act's use of the term "individual" was not intended to extend to corporate entities. *See Max-Planck*, 734 F.3d at 1323.

*Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993) (same). Consistent with the District Court's analysis below, this Court in *Max-Planck* identified that Congress had explicitly defined "inventor" using the term "individual." *Max-Planck*, 734 F.3d at 1323 (quoting 35 U.S.C. §§ 100(f)-(g)). Moreover, this Court concluded that the statutory context required a natural person "[t]o perform th[e] mental act" associated with invention. *Id.*

Thaler hardly mentions this Court's prior decisions, arguing instead only that the cases are irrelevant because they considered only whether a "corporate entity" – and not precisely whether "artificial intelligence" – constitutes an "individual" as needed to be a statutory "inventor." *Br.*, at 17.[6] It is certainly true that the precise question at issue in both decisions (as it was in the Supreme Court's opinion in *Mohamad*) was whether Congress's use of the term "individual" could be construed to include an "organization." But there is simply no language in any of these decisions – and plaintiff identifies none – that would limit the application of the holding that the term "individual" in the Patent Act's definition of "inventor" must be interpreted to mean a "natural person."

[6]Thaler similarly concedes that what Congress, and this Court, meant by the notion of a "mental act" in connection with invention is unclear. *Br.*, at 22.

This is exactly the gravamen of the Ninth Circuit's recent analysis in *Animal Legal Defense Fund v. Dep't of Agriculture*, 933 F.3d 1088 (9th Cir. 2019). There, the Ninth Circuit construed a portion of the Freedom of Information Act ("FOIA") in which a requester may obtain "expedited processing" of a request for records if there is a "compelling need," which the statute defines as a situation in which "a failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual." *Id.* at 1093 (quoting 5 U.S.C. § 552(a)(6)(E)(v)(I)). The requester in *Animal Legal* argued that the statutory term "individual" should be construed to include a living, sentient animal and not just a "human being"; the Ninth Circuit, employing the same analysis that the Supreme Court used in *Mohamad*, held otherwise. *See id.* at 1093-96.

First and foremost, the Ninth Circuit dispatched the very argument that Thaler asserts here – that prior decisional authority only held that an "individual" could not be an organization, and left open the issue of whether "individual" could be construed as something other than a "human being":

> The [*Mohamad*] Court defined "individual" to mean "natural person" as opposed to an organization. Although *Mohamad* addressed a different statutory context, we find much of its reasoning applicable here.

*Id.* at 1093. Like the Supreme Court, the Ninth Circuit similarly looked to *Mohamad*'s survey of dictionaries and the Dictionary Act (as well as the APA itself), and concluded that it was "clear" that the term "individual" "can only be understood to refer to a human being" and not an animal. *Id.* at 1094 (holding that the "plain meaning of 'individual,' absent a context signifying otherwise, is 'a human being, a person'").

3. Finally, Thaler devotes a large portion of his opening brief before this Court to the very few *foreign* tribunals that – in interpreting their own nation's patent laws – have concluded that artificial intelligence can be an "inventor." At the outset, none of these foreign tribunals have construed the United States's Patent Act, and thus their analyses are irrelevant to the interpretative exercise currently before this Court. Indeed, the decision of the Federal Court of Australia – which Thaler particularly discusses in his brief – clearly interpreted different statutory terminology; *i.e.*, terminology that does not include the term "individual" that Congress expressly used in the Patent Act. And foreign courts are far from universal in their assessment of this issue.[7]

[7] If such decisions were somehow relevant, other than in South Africa and Australia, Thaler has not faired well in his attempt to patent DABUS's putative output. In particular, the United Kingdom's High Court of Justice has affirmed

### B. <u>THALER'S NON-TEXTUAL POLICY ARGUMENTS CANNOT OVERCOME THE PLAIN MEANING OF THE TERM "INDIVIDUAL"</u>

In lieu of the necessary textual analysis described above, Thaler provides this Court with his own normative assessment of the policy that the United States should adopt with respect to inventions devised by artificial intelligence. *Br.*, at 23-29. Indeed, Thaler goes so far as to accuse the District Court of placing the United States behind "other countries [that] are promoting the progress of science," and "adopt[ing] luddism." *Id.* at 2. Thaler similarly dresses these policy arguments in constitutional garb, suggesting that a policy decision on the part of Congress not to include artificial intelligence within the term "inventor" would run afoul of Article I's Patent and Copyright Clause. *Id.* at 30-31.

---

the United Kingdom Intellectual Property Office's conclusion that only a "natural person" can be an "inventor" under the United Kingdom's "Patents Act 1977." *See Thaler v. Comp. Gen. of Patent, Designs, & Trademarks*, [2020] EWHC 2412 (Pat.) (Sept. 21, 2020), *available at* << https:// www.bailii.org/ew/cases/EWHC/ Patents/2020/2412.html>> (visited Jan. 28, 2022). The European Patent Office has refused the Applications because DABUS is not a natural person. *See Grounds for the EPO decision of 27 January 2020 on EP 18 275 163*, *available at* <https://register.epo.org/application?documentId=E4B63SD62191498&number=EP18275163&lng=en&npl=false> (visited Jan. 28, 2022). And the Taiwan IPC Court has held that artificial intelligence does not qualify as an inventor. *See DABUS was Denied Inventorship by Taiwan IPC Court*, *available at* <https:// www. lexology.com/library/detail.aspx?g=b1f265dc-b10e-4465-946f-5fbdb8b6982f> (visited Jan. 28, 2022).

None of these policy positions have any impact on the proper resolution of the sole question raised here. The Supreme Court and the Federal Circuit have provided that such policy appraisals are irrelevant to statutory construction, and in any event, plaintiff's policy-related commentary is untethered to anything other than his own opinion and speculation. Moreover, the Supreme Court has repeatedly held that the Constitution provides a wide berth for congressional action (or inaction) in the patent and copyright context, so long as there is a conceivable rational basis for its legislative decision.

1. Initially, Thaler's policy assessments about how including machines that utilize artificial intelligence within the statutory ambit of "inventor" will spur innovation, *Br.*, at 24-25, bring him no closer to bringing DABUS – or artificial intelligence generally – within the statutory term "individual." The simple and short answer to these normative considerations is that the Supreme Court and the Federal Circuit have held them to be irrelevant to judicial review of the USPTO's statutory construction analysis:

> *Fisons* makes what can only be characterized as a "policy argument" pointing to statements of lofty goals indicating that Congress broadly sought to encourage pharmaceutical innovation by enacting the 1984 Act. . . . It is irrelevant, however, that we might agree with *Fisons* that, as a matter of policy, Congress might better achieve its goals through a more liberal grant of patent term extension benefits. Matters of policy are for Congress, not

> the courts, to decide. Accordingly, *Fisons*' policy arguments are unhelpful in our interpretation of the complex statutory provision at issue.

*Fisons*, 876 F.2d at 101-02; *see also Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1678 (2017) ("Even if we were persuaded that Amgen had the better of the policy arguments, those arguments could not overcome the statute's plain language, which is our 'primary guide' to Congress' preferred policy."). In short, this Court cannot "set aside a statute's plain language simply because [one litigant] thinks it leads to undesirable consequences in some applications." *Friends of Earth, Inc. v. EPA*, 446 F.3d 140, 145 (D.C. Cir. 2006).

The Supreme Court's decision in *Diamond v. Chakrabarty*, 447 U.S. 303 (1980), is not to the contrary. *Br.*, at 26. In *Diamond*, the Supreme Court used the same canons of statutory construction as did the District Court here – including the application of dictionary definitions – to conclude that Congress had deliberately chosen to employ two "broad terms" ("manufacture" and "composition of matter") that would "promot[e]," in Congress' view, innovation. *See Diamond*, 447 U.S. at 308; 315-16. And in so holding, the Supreme Court yet again recognized that the assessment of policy choices – to include issues about the promotion of innovation – fall outside of the judiciary's role in statutory construction:

> What is more important is that we are without competence to entertain these arguments – either to brush them aside as fantasies generated by fear of the unknown, or to act on them. The choice we are urged to make is a matter of high policy for resolution within the legislative process after the kind of investigation, examination, and study that legislative bodies can provide and courts cannot.

*Id.* at 317. The Supreme Court also recognized that this reticence to engage in judicial policymaking is at its zenith when the judiciary is "asked," as Thaler concededly does here, "to extend patent rights into areas wholly unforeseen by Congress." *Id.* at 314-15 (quoting *Parker v. Flook*, 437 U.S. 584, 596 (1978)).

2. Nor can Thaler promote his policy preferences through resort to the Constitution's Patent and Copyright Clause. As this Court is well aware, the Patent and Copyright Clause is a part of Article I of the Constitution, which delineates the boundaries of congressional power; as the Supreme Court has put it, the Clause is "both a grant of power and a limitation" on the extent of Congress's legislative authority. *See Graham v. John Deere Co.*, 383 U.S. 1, 5 (1966). And for this reason, Thaler has not – and cannot – cite any authority for the proposition that the Patent and Copyright Clause *requires* Congress to promulgate legislation that would extend patent rights to certain circumstances, or that the judiciary may constitutionally invalidate patent legislation merely based on its own view of whether that legislation fails to promote "innovation."

The Supreme Court and this Court have repeatedly noted the limits on constitutional review of congressional action under the Patent and Copyright Clause. For instance, "[i]t is Congress that has been assigned the task of defining the scope of the limited monopoly that should be granted to authors," and the courts are "not at liberty to second guess congressional determinations and policy judgments of this order, however debatable or arguably unwise they may be." *Eldred v. Ashcroft*, 537 U.S. 186, 205; 208 (2003); *see also Figueroa v. United States*, 466 F.3d 1023, 1031-32 (Fed. Cir. 2006) ("In deciding whether the legislation was permissible under the Patent Clause, we accord great deference to Congress's policy determinations."). Courts only look to whether there is a rational basis for Congress to have believed that its legislative action was consistent with the "aims" of the Patent and Copyright Clause. *Eldred*, 537 U.S. at 205; *see also Figeroa*, 466 F.3d at 1032. There can be little doubt that this exceedingly low threshold is met with respect to limiting statutory "inventors" to "natural persons."[8] *Cf. Max-Planck*, 734 F.3d at 1323.

[8] Indeed, the USPTO continues to study the impact of artificial intelligence on current patent regulations, and has engaged the public-at-large in a conversation on the subject. In particular, the USPTO held a conference on artificial intelligence policy in January 2019, and then, in August and October 2019, issued requests for public comment on a host of issues related to the intersection of

The Supreme Court has been even more skeptical of attempts to utilize the Patent and Copyright Clause to mandate that Congress promulgate a certain policy preference into law. On this score, in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989), the Supreme Court refused to allow a state legislature to authorize limited patent protection because it conflicted "with the balance struck by Congress in our patent laws" not to provide such patent protection. *Id.* at 152. The Court continued to explain that this congressional decision not to act was constitutionally valid, and that the state's decision to remedy this putative omission was not:

> Congress explicitly refused to take this step in the copyright laws, and despite sustained criticism for a number of years, it has declined to alter the patent protections presently available for industrial design. It is for Congress to determine if the present system of design and utility patent is ineffectual in promoting the useful arts in the context of industrial design.

*Id.* at 167-68.

---

intellectual property policy and artificial intelligence. The USPTO issued a comprehensive report on those comments in October 2020. *See generally Public Views on Artificial Intelligence and Patent Policy, available at* https://www.uspto.gov/sites/default/files/documents/USPTO_AI-Report_2020-10-07.pdf (visited Jan. 28, 2022). Of note, many commenters did not share Thaler's subjective view that allowing artificial intelligence machines to serve as "inventors" was the correct policy choice, or that the question was nearly as simple as plaintiff suggests in his opening memorandum. *See id.* at 6 (identifying comments that highlighted the need to "carefully consider" the practical effects of allowing an artificial intelligence machine to be an inventor).

* * *

As the Supreme Court has recognized, "[c]laims that a statutory precedent has 'serious and harmful consequences' for innovation are . . . 'more appropriately addressed to Congress.'" *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 464-65 (2015) (quoting *Halliburton, Inc. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 277 (2014)). Congress's "statutory precedent" here – whether right or wrong – is that an "inventor" under the Patent Act must be a "natural person" (*i.e.*, a "human being"). If Thaler is correct in his assessment of how this "precedent" will impact innovation, "Congress has the prerogative to determine the exact right response – choosing the policy fix, among many conceivable ones, that will optimally serve the public interest." *Kimble*, 576 U.S. at 465.

## II. THE USPTO'S STATUTORY CONSTRUCTION IS ALTERNATIVELY ENTITLED TO *SKIDMORE* DEFERENCE

Although the District Court held that the USPTO had correctly construed the Patent Act to limit "inventors" to natural persons, it alternatively held that the USPTO's construction – articulated through its final written decision – was entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Even if this Court were to derive a different result from its application of statutory construction canons, this Court should affirm the judgment below on this alternative ground.

*Skidmore* requires courts to accord deference to agency interpretations of statutory provisions that fall within its particular subject-matter bailiwick to the extent that those decisions have the power to persuade. *See id.* at 140; *see also Chudik v. Hirshfeld*, 987 F.3d 1033, 1039 (Fed. Cir. 2021) ("Where the *Chevron* framework is inapplicable, we determine the 'best interpretation' of the statute for ourselves, while giving the agency's position such weight as warranted by *Skidmore*.").[9] In determining whether to provide this type of judicial deference to an agency, courts look to the validity of the agency's reasoning, the decision's consistency with earlier and later pronouncements, the thoroughness of the decision, and any additional other relevant factors. *See id*.; *see also Cathedral Candle Co. v. ITC*, 400 F.3d 1352, 1366 (Fed. Cir. 2005) ("[W]e believe the Supreme Court intends for us to defer to an agency interpretation of the statute that it administers if the agency has conducted a careful analysis of the statutory issue, if the agency's position has been consistent and reflects agency-wide policy, and if the agency's position constitutes a reasonable conclusion as to the proper

[9] Thaler argues that the USPTO is not entitled to the more significant deference to agency interpretations of statutory provisions provided by *Chevron USA, Inc. v. Nat. Res. Def. Coun., Inc.*, 467 U.S. 837 (1984). *Br.*, at 14-15. The USPTO, however, has never argued that it was entitled to *Chevron* deference with respect to its construction of "inventor" under the Patent Act.

construction of the statute, even if we might not have adopted that construction without the benefit of the agency's analysis.").

As the District Court determined, Appx11, the USPTO's decision here was extensively and carefully detailed, addressed all of the pertinent statutory provisions of the Patent Act relating to the term "inventor," and was not inconsistent with prior USPTO pronouncements on the same statutory issue. Thaler does not cite to a single USPTO statement or decision adopting a different statutory construction, and his retort is nothing more than a conclusory encapsulation of his own erroneous interpretative position: that the USPTO's decision "did not consider alternative interpretations, or statutory constructions, or the constitutional imperative . . . , failed to provide any evidence that Congress intended to exclude AI-generated inventions from patentability, and did not engage with the effects of their interpretation." *Br.,* at 15-16. This is simply inaccurate. The USPTO's final decision did consider (but rejected) Thaler's own preferred alternative interpretation for "inventor," AR460, and noted Thaler's statements about the effects of excluding artificial intelligence from "inventor" (but concluded that they could not overcome the plain language of the statute). Thaler did not even identify the "constitutional imperative" in his administrative papers, and as

stated above, under well-settled principles of statutory construction, it was *Thaler*, and not the USPTO, who had to provide evidence (textual or otherwise) to rebut the plain and well-established meaning of the term "individual."

In short, the District Court correctly held that the USPTO's construction of the Patent Act was entitled to *Skidmore* deference.

**CONCLUSION**

For the foregoing reasons, this Court should affirm the District Court's entry of summary judgment in favor of the USPTO.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: /s/ *Dennis C. Barghaan, Jr.*

DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax: (703) 299-3983
Email: dennis.barghaan@usdoj.gov

DATE: February 3, 2022

ATTORNEYS FOR DEFENDANTS-APPELLEES

OF COUNSEL: Meredith Schoenfeld
Peter Sawert
Associate Solicitors
United States Patent & Trademark Office

**RULE 32(g) CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in Microsoft Word using 14-point Times New Roman, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) and Circuit Rule 32(b)(1) because it contains 6,881 words, excluding the parts of the brief exempted under Rule 32(f) and Circuit Rule 32(b)(2), according to the count of Microsoft Word.

/s/ Dennis C. Barghaan, Jr.
DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax: (703) 299-3983
Email: dennis.barghaan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2022, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system. All counsel of record were served via CM/ECF on that date. I further certify that I will cause six paper copies to be filed with the Court within five days of the Court's acceptance of the brief.

/s/ Dennis C. Barghaan, Jr.
DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax: (703) 299-3983
Email: dennis.barghaan@usdoj.gov