**2021-2347**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

**STEPHEN THALER,**

***Plaintiff-Appellant***

**v.**

**ANDREW HIRSHFELD, Performing the Functions and Duties of the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, UNITED STATES PATENT AND TRADEMARK OFFICE,**

***Defendants-Appellees***

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA in Case No. 1:20-CV-00903-LMB-TCBAVAED,

The Honorable Judge Leonie M. Brinkema

---

# PLAINTIFF-APPELLANT STEPHEN THALER'S REPLY BRIEF

Ryan Abbott, Esq.
Brown, Neri, Smith & Khan, LLP
11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
Phone: (310) 593-9890
Fax: (310) 593-9980

*Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........ i
TABLE OF AUTHORITIES ........ ii
I. INTRODUCTION ........ 1
II. ARGUMENT ........ 2
A. The USPTO Improperly Divorces Context from the Interpretation of Plain Meaning, And Argues Against a Strawman That Thaler Ignores Plain Meaning, When Instead Intent and Context Show the Plain Meaning of Inventor Includes AIs ........ 2
1. *The USPTO's Opposition Ignores Context Specific to the Patent Act Which Is the Key to Understanding the Meaning of Inventor* ........ 2
2. *Looking at the Provisions of the Patent Act As A Whole, the Context Clearly Requires That an AI Can Be an Inventor Due To Broad Language that Supports Innovation* ........ 7
B. The Patent Act's Purpose Is Critical For Understanding The Legal Nature Of Inventorship ........ 10
1. *Evolving Technology Can Render the Patent Act Ambiguous, Necessitating Interpretation Consistent With Statutory Purpose* ........ 10
2. *Courts Look to Purpose to Interpret Ambiguous Statutes* ........ 12
3. *Constitutional Avoidance Is Also Relevant for Interpretation of the Patent Act* ........ 13
C. The USPTO Is Not Entitled to Skidmore Deference As It Has Not Maintained a Interpretative View of Language It Maintains Is Plain ........ 17
III. CONCLUSION ........ 18
CERTIFICATE OF SERVICE ........ 19
CERTIFICATE OF COMPLIANCE ........ 20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Animal Legal Def. Fund v. United States Dep't of Agric.*,
933 F.3d 1088 (9th Cir. 2019) ....... 6
*Ashford Univ., LLC v. Sec'y of Veterans Affs.*,
951 F.3d 1332 (Fed. Cir. 2020) ....... 6
*BedRoc Ltd., LLC v. United States*,
541 U.S. 176 (2004) ....... 13
*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989) ....... 15
*Clinton v. City of New York*,
524 U.S. 417 (1998) ....... 10
*Davis* v. *Michigan Dept. of Treasury*,
489 U. S. 803 (1989) ....... 3
*Demko v. United States*,
44 Fed. Cl. 83 (1999), *aff'd*, 216 F.3d 1049 (Fed. Cir. 2000) ....... 12
*Diamond v. Chakrabarty*,
447 U.S. 303 (1980) ....... 4, 16
*District of Columbia v. Carter*,
409 U.S. 418 (1973) ....... 12
*Eldred v. Ashcroft,*
537 U.S. 186, 205 (2003) ....... 14
*Figueroa v. United States,*
466 F.3d 1023 ....... 14
*Fisons plc v. Quigg*,
876 F.2d 99 (Fed. Cir. 1989) ....... 13
*Fort. Corp. v. United Artists Television, Inc.*,
392 U.S. 390 (1968) ....... 11
*Google LLC v. Oracle Am., Inc.*,
141 S. Ct. 1183 (2021) ....... 11
*Griffin v. Oceanic Contractors, Inc.*,
458 U. S. 564 (1982) ....... 10
*Horner v. Jeffrey*,
823 F.2d 1521 (Fed. Cir. 1987) ....... 13
*Mohamad v. Palestinian Auth.*,
566 U.S. 449 (2012) ....... 4, 5
*Rex v. United States*,
53 Ct. Cl. 320 (1918), *aff'd*, 251 U.S. 382 (1920) ....... 12
*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997) ....... 4

*Sandoz Inc. v. Amgen Inc.*,
137 S. Ct. 1664 (2017)....................13
*Selman v. United States*,
498 F.2d 1354 (Ct. Cl. 1974)....................13
*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) ....................17
*Sony Corp. of America v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) ....................11
*Twentieth Century Music Corp. v. Aiken*,
422 U.S. 151 (1975) ....................11
*Tyler* v. *Cain*,
533 U. S. 656 (2001) ....................3
*Veterans4You LLC v. United States*,
985 F.3d 850 (Fed. Cir. 2021) ....................16
*Yates v. United States*,
574 U.S. 528 (2015) ....................4, 5, 6, 7

**Statutes**

35 U.S.C. § 100(f)....................7
35 U.S.C. § 101 ....................7
35 U.S.C. § 103 ....................9
37 CFR 1.43 ....................8
37 U.S.C. § 117....................8
5 U.S.C. § 118....................9

**Other Authorities**

https://dictionary.cambridge.org/us/dictionary/english/individual....................3
Joe Matal, A Guide to the Legislative History of the America Invents Act: Part I of II, 21 Fed. Circuit B.J. 435 (2012) ....................7

## I. <u>INTRODUCTION</u>

The USPTO's argument that the Patent Act's language is clear requires disregarding context and Congressional intent. This approach is rightly prohibited as a manner of statutory construction because language cannot be properly understood when it is divorced from context and purpose. It is the opposite of the methodology proscribed in all the relevant precedent including the cases cited by the USPTO. The Supreme Court, in reviewing the Patent Act, has found clarity in Congress' desire to use broad, open language to prevent ossified, parochial constructions that could disincentivize scientific progress.

The USPTO reveals the post-hoc, mercurial nature of its supposedly "plain reading" by significantly altering its own analysis since its final agency action. It opened that action by relying on words like "whoever," an approach which it has now explicitly jettisoned. The USPTO's sudden and unexplained tactical change not only demonstrates why the agency is owned no deference, it also shows how tenuous its position is.

To properly understand the meaning of "inventor" and "individual" and whether an AI can be an inventor, one must do more than the USPTO urges—the Court must consider at the context of words *within* the Patent Act. The context of the Patent Act makes it clear that Congress intended inventor to have a broad definition. It is not disputed that DABUS was the inventor of the patent applications as a matter of fact, and the fact that technology has evolved to the point where machines can function as inventive entities requires an interpretation of the Patent Act consistent with that reality. The alternative is not only internally inconsistent, but it also produces an absurd result.

Alternately, if the Court holds that the statutory language is ambiguous, and the Supreme Court has noted that such ambiguity can be caused by evolving technology, the purpose of the Patent Act itself must be considered. As the USPTO notes, the Act was amended by the Leahy-Smith America Invents Act ("AIA") to "to ensure that the patent system in the twenty-first century reflects the constitutional imperative" of the Patent and Copyright Clause (see U.S. CONST. Art. I, § 8, cl. 8) to further innovation and "to correct flaws in the system" that Congress had identified. H.R. RPT. 112-98, at 68-69 (June 1, 2011). Yet, the USPTO is now arguing for an interpretation that would prohibit protection for an entire field of innovation. This defies the Constitutional mandate, the purpose of the Patent Act, and the purpose of the AIA.

Statutory construction is a more nuanced practice than the USPTO acknowledges, presenting this as a simple case with plain, simple language. Even plain meaning requires a holistic view of words that are used, the context in which those words are used, and the intent behind those words. Taking this holistic view, it is clear that an AI can be an inventor.

## II. ARGUMENT

### A. The USPTO Improperly Divorces Context from the Interpretation of Plain Meaning, And Argues Against a Strawman That Thaler Ignores Plain Meaning, When Instead Intent and Context Show the Plain Meaning of Inventor Includes AIs

#### 1. *The USPTO's Opposition Ignores Context Specific to the Patent Act Which Is the Key to Understanding the Meaning of Inventor*

Appellant argues that statutory language is either clear only in context and in line with the statutory intent, or if not, ambiguous. Individual words must

be interpreted "in their context and with a view to their place in the overall statutory scheme." *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 809 (1989). Courts "do not… construe the meaning of statutory terms in a vacuum." *Tyler* v. *Cain*, 533 U. S. 656, 662 (2001).

The USPTO's sole argument is based on plain language, but they argue that because their interpretation is correct that Thaler therefore seeks to set plain language aside. To the contrary of USPTO's statement in its Opposition, Thaler has never suggested that the Court should "ignore" the plain language of the Act. (Resp. Br. at 16.)[1] Thus, the entire tenor of Appellee's brief is misleading and not addressed to Thaler's actual arguments.

As noted by the USPTO, "inventor" is defined in the Act, but "individual" is not.[2] The USPTO argues that because "individual" has been interpreted to mean a human being in other contexts, that it can have no other meaning in the Patent Act, even though the context is entirely different.

"Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, '[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.' *Yates v. United States*,

[1] Appellant actually wrote, "Setting aside plain language, USPTO has provided no evidence, case law, statutory law, or any other authority that would indicate that Congress intended to prohibit patents on AI-Generated Inventions." (Opening Br. At 20.) In context, this is making the same point—that without a plain language argument, the USPTO has no ground to stand on.

[2] Individual has multiple dictionary definitions, which can include meaning "a thing." See, e.g., https://dictionary.cambridge.org/us/dictionary/english/individual

574 U.S. 528, 537 (2015) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).)

The holding in *Diamond* is in line with this reasoning, namely that the intent and overall thrust of a statute can make language clear and support a plain reading that may not be in line with the literal dictionary definition of words. Instead of addressing this point, the USPTO misinterprets the Appellant's argument along with the holding and analysis in *Diamond*, rendering their attempt at distinguishing this case unavailing. One must read the intent and language together, not at odds, but interwoven as in *Diamond* to find the clear, broader meaning of "individual" and "inventor." "The subject-matter provisions of the patent law have been cast in broad terms to fulfill the constitutional and statutory goal of promoting 'the Progress of Science and the useful Arts' with all that means for the social and economic benefits envisioned by Jefferson. Broad general language is not necessarily ambiguous when congressional objectives require broad terms." *Diamond v. Chakrabarty*, 447 U.S. 303, 315 (1980). What the USPTO attempts to frame as mere "policy argument" is instead an understanding of context and Congressional intent which is necessary to the proper resolution of this appeal.

The USPTO relies on statutes containing the word "individual" that, in context, refer to human beings. Pointing to the Torture Victim Protection Act (TVPA), the USPTO cites *Mohamad* in which the use of individual was determined to be a human, when the entire context and purpose of the TVPA made that clear. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 455–56 (2012) ("The Act's liability provision uses the word 'individual' five times in

the same sentence: once to refer to the perpetrator . . . and four times to refer to the victim.") Given the context and usage, there is no other logical result in *Mohamed.*

However, this interpretation does *not* apply to the Patent Act. *Mohamed* made it clear that its interpretation of "individual" was not universally applicable, because "Congress remains free . . . to give the word a broader or different meaning. But . . . there must be *some* indication that Congress intended such result." *Mohamad v. Palestinian Auth.*, 566 U.S. at 455. As fully set forth in the Brief, the Patent Act is replete with these indications, because, as found in *Diamond*, the language itself is broad with a clear objective.

The USPTO hand-waves the argument in the Brief regarding the term "whoever," having general application (Opening Br. at 19), claiming it was not used in the specific definition itself. (Resp. Br. at 23 n. 4.) Yet, this was a primary basis for the USPTO's decision to deny both patent applications; it even bolded the word "whoever." (Appx347, Appx598.) This plainly disregards the rule set forth in *Mohamed,* in which the Court looked to context outside of the definition, with discussion of the perpetrator and victims as individuals. *Mohamed* 566 U.S. at 455.

In addition, *Mohamed* cannot be properly understood without also incorporating the rule from *Yates*, which shows that context is king. *See, e.g., Yates v. United States*, 574 U.S. at 532 (holding a fish is not a "tangible object," as that term is used in 18 U.S.C. § 1519). The reason *Yates* concluded that a fish is not a tangible object, an absurd result if one relies exclusively on a dictionary, is because of a "contextual reading," that tied a "tangible object" to

"surrounding words," as well as the placement within the broader act and related provisions enacted at the same time. *Id*. at 536.

Even when trying to distinguish another case making this point in Appellant's brief, *Ashford Univ*, the USPTO must accept that a "statutory scheme" is an important part of the interpretative equation. But they ignore their own constitutionally mandated statutory scheme to promote progress. *Ashford Univ., LLC v. Sec'y of Veterans Affs.*, 951 F.3d 1332, 1342 (Fed. Cir. 2020) ("But the word "individual," when read in the context of a statutory scheme, can include both natural persons and other entities.")

Likewise, the USPTO's own cases rely on contexts that differ entirely from the Patent Act, with entirely different, narrower aims. In *Legal Defense Fund*, the Ninth Circuit looked the use of the word "individual" in FOIA, which was once again clearly within a narrow context. *Animal Legal Def. Fund v. United States Dep't of Agric.*, 933 F.3d 1088, 1095 (9th Cir. 2019) ("While FOIA as a whole favors broad disclosure, the expedited processing provision serves the narrower purpose of prioritizing certain requests over others.") That is not the case with the Patent Act, which has a clear mandate to support progress, required by the Constitution, and there is no indication that this should be narrowed anywhere in the Act. Thus, given the different context, the *Mohamad* analysis leads to a different interpretation of the Patent Act.

The USPTO's references to "individual" meaning a human in other contexts is therefore not availing. "We have several times affirmed that identical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute." *Yates v. United*

*States*, 574 U.S. at 537.

2. *Looking at the Provisions of the Patent Act As A Whole, the Context Clearly Requires That an AI Can Be an Inventor Due To Broad Language that Supports Innovation*

Looking at the definitions relevant to inventorship, the context is as broad as possible, as long as there is an invention: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The definition of an inventor, reads in whole: "The term 'inventor' means the individual or, if a joint invention, the individuals collectively who invented or discovered the subject matter of the invention." 35 U.S.C. § 100(f). Looking at these foundational statutes together, the key is that the actual inventive entity should be designated as the inventor.[3] The result is properly and transparently designating inventorship, ensuring that a patent can be obtained, and ensuring appropriate entitlement to that property. This in turn incentivizes innovation, disclosure of inventions that might otherwise be kept as trade secrets, and the commercialization of new products based on those inventions.

This reading follows from the analysis in *Yates*. Because Congress placed the term "tangible object" inside limited-scope provisions relating to financial documents, it was also limited. In the present case, the Act, itself within the

[3] This circuit's Bar Journal describes the legislative history on the definition of inventor as follows: "The AIA defines the word "inventor" in the new subsection (f) of § 100 to mean either a sole inventor or, in the case of a joint invention, the entire inventive **entity**." Joe Matal, A Guide to the Legislative History of the America Invents Act: Part I of II, 21 Fed. Circuit B.J. 435, 447 (2012) (emphasis added).

context of the Constitution's broad mandate to support science and useful arts, sets forth broad, general language, without any explicit restrictions on who can invent whatsoever. As such, the most logical reading includes any actual inventive entity qualifying as an inventor. Here, DABUS invented the subject matter of the patent applications in question, with no claim that any natural person could qualify as an inventor.

The USPTO's appeal to a broader context looks to the oath requirement, but the law relating to oaths bolsters Thaler's argument. Both the Patent Act and regulations from the USPTO account for situations where the oath is not possible, and even so, *the correct inventor must still be listed*. 37 U.S.C. § 117 states that, "Legal representatives of deceased inventors and of those under legal incapacity may make application for patent upon compliance with the requirements and on the same terms and conditions applicable to the inventor." Thus, it is normal and accepted that patents can be granted in the case of inventors who have not provided an oath. In addition, inventors can lack capacity. Instead, the statute's overall design is to properly list the inventor even if the inventor cannot execute an oath and even if the inventor will never have any rights in the underlying application. Indeed, most inventions are never owned by inventors but rather vest directly in their employers.

37 CFR 1.43 states that "If an inventor is deceased or under legal incapacity, the legal representative of the inventor may make an application for patent on behalf of the inventor. If an inventor dies during the time intervening between the filing of the application and the granting of a patent thereon, the letters patent may be issued to the legal representative upon proper

intervention."

5 U.S.C. § 118 provides yet another instance where the inventor does not have to file for a patent. It reads: "Whenever an inventor refuses to execute an application for patent, or cannot be found or reached after diligent effort, a person to whom the inventor has assigned or agreed in writing to assign the invention or who otherwise shows sufficient proprietary interest in the matter justifying such action, may make application for patent on behalf of and as agent for the inventor on proof of the pertinent facts and a showing that such action is necessary to preserve the rights of the parties or to prevent irreparable damage; and the Director may grant a patent to such inventor upon such notice to him as the Director deems sufficient, and on compliance with such regulations as he prescribes."

Critically, a broad understanding of inventor is required by other sections of the Patent Act. USPTO does not even attempt to reconcile this with their narrow approach to inventorship—because they cannot. Section 103 could not be more explicit that the Act prohibits refusing a patent based on the manner in which an invention is made. 35 U.S.C. § 103 ("Patentability shall not be negated by the manner in which the invention was made.") Yet, by refusing to register a patent for an AI-Generated Invention, the USPTO expressly runs afoul of Section 103. Unlike the roundabout arguments made by the USPTO going to numerous interpretations of other statutes in other contexts, this *is* a plain prohibition in the Act itself, and it is telling that the USPTO does not even attempt to address this argument or this provision, and Section 103 is not even *cited* in the opposition, much less discussed.

Further, by violating Section 103, USPTO's new-found reading of the Patent Act "would produce an absurd and unjust result which Congress could not have intended." *Clinton v. City of New York*, 524 U.S. 417 (1998) (citing *Griffin* v. *Oceanic Contractors, Inc.,* 458 U. S. 564, 574 (1982) (holding that in context, "it is clear that Congress meant that word [individual] to be construed broadly to include corporations and other entities.")

### B. <u>The Patent Act's Purpose Is Critical For Understanding The Legal Nature Of Inventorship</u>

Thaler does not provide policy arguments to make a normative assessment of what the law *should* be, but instead addresses the implications of USPTO's decision to explain what the law *must* be, given the purpose of the Patent Act. USPTO has invented another strawman to dismiss and mischaracterize Thaler's arguments regarding the Constitution, constitutional avoidance, and statutory purpose as mere policy. However, while policy can be disregarded, statutory *purpose* has long been established as critical for understanding an ambiguous statute. Thus, while the intent of the statute and context makes the meaning of "inventor" clear and unambiguous to Thaler, should the Court find that the language is instead ambiguous, or that the USPTO's interpretation would result in an absurd outcome, policy as it relates to the statute's purpose is legally significant.

#### 1. <u>*Evolving Technology Can Render the Patent Act Ambiguous, Necessitating Interpretation Consistent With Statutory Purpose*</u>

The Supreme Court has repeatedly noted that evolving technology can render a statute ambiguous, at which point a purpose-based analysis must be applied. "We have understood the provision to set forth general principles, the

application of which requires judicial balancing, depending upon relevant circumstances, including 'significant changes in technology.'" *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1197 (2021) (quoting *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 430 (1984).) As explained by the Supreme Court regarding the Patent Act's sister Act, "When technological change has rendered its literal terms ambiguous, the Copyright Act must be construed in light of its basic purpose." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). For instance, in *Aiken*, the issue was whether playing a radio in a restaurant constituted a performance and thus an infringement. The meaning of performance was therefore ambiguous given the technology invented after the 1909 Copyright Act. The Supreme Court held that playing a radio in a restaurant was not a "performance." *Id*. at 162. This was because of a simple logic that a passive listener cannot be a performer, and "those who listen do not perform, and therefore do not infringe." *Id*. at 159 (citation omitted).

The Supreme Court has directly stated that "our inquiry cannot be limited to ordinary meaning and legislative history, for this is a statute that was drafted long before the development of the electronic phenomena with which we deal here." *Fort. Corp. v. United Artists Television, Inc.*, 392 U.S. 390, 395 (1968). Thus, "[w]e must read the statutory language of 60 years ago in the light of drastic technological change." *Id*. In doing so, the Supreme Court defined an airing over its airwaves as a "performance" of copyright work. *Id*. Like *Aiken*, the court looked at the actual relationship between performers and listeners, to essentially determine what was going on within the ambit of the Act. The Court

reasoned that "while both broadcaster and viewer play crucial roles in the total television process, a line is drawn between them. One is treated as active performer; the other, as passive beneficiary." *Id*. at 399.

When the Patent Act was written, AI was incapable of invention. This has changed just as performances have changed over time. But the nature of the inventive act remains the same, as the USPTO concedes, such that an invention has an inventor, and there is a property right in a patentable invention. DABUS invented the inventions at issue, and DABUS is owned as property by Thaler. Thaler would own a piece of physical property manufactured by DABUS, Thaler owned the inventions as trade secrets prior to their disclosure in the applications, and Thaler should therefore own the patent applications on the inventions.

### 2. *Courts Look to Purpose to Interpret Ambiguous Statutes*

It is also long established that "where a literal interpretation contravenes the purpose of the statutory scheme, leads to an absurd result, or is ambiguous, the court will look beyond the express language of the statute." *Demko v. United States*, 44 Fed. Cl. 83, 87 (1999), *aff'd*, 216 F.3d 1049 (Fed. Cir. 2000). "[W]ords generally have different shades of meaning, and are to be construed if reasonably possible to effectuate the intent of the lawmakers; and this meaning in particular instances is to be arrived at, not only by a consideration of the words themselves, but by considering, as well, the context, the purposes of the law, and the circumstances under which the words were employed." *District of Columbia v. Carter,* 409 U.S. 418, 420 (1973) (citations omitted); *Rex v. United States*, 53 Ct. Cl. 320, 331 (1918), *aff'd*, 251 U.S. 382 (1920) ("If the statute is

ambiguous and subject to construction, the primary duty of the court is to ascertain the intended purpose of the statute…").

The USPTO's own cited cases agree that when there is ambiguity, courts should look beyond the four corners of the statute. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("Thus, our inquiry begins with the statutory text, and ends there as well *if the text is unambiguous*.) (emphasis added); *Horner v. Jeffrey*, 823 F.2d 1521, 1532 (Fed. Cir. 1987) (noting that no party argued the statute was ambiguous, but noted that case law that states that "a clear and *unambiguous* statute speaks for itself") (quoting *Selman v. United States*, 498 F.2d 1354, 1356 (Ct. Cl. 1974)) (emphasis added).

Likewise in *Sandoz Inc*. the Court held that it cannot use policy arguments to "set aside a statute's plain language," *Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1678 (2017), but it does not say that purpose cannot be considered to interpret an ambiguous statute. The *Fisons* opinion, cited by the USPTO goes even further, explaining that plain language can be overcome by a clear purpose, completely in contravention of the USPTO's argument. *See Fisons plc v. Quigg*, 876 F.2d 99, 101 (Fed. Cir. 1989) (Stating that plain language can be overcome when "a contrary legislative intent is clearly shown by the legislative history."). As explained in the Appellant's Opening Brief, a broad interpretation of the term inventor is required to be consistent with the legislative purpose of the Patent Act. (Opening Br. at 23-29)

### 3. *Constitutional Avoidance Is Also Relevant for Interpretation of the Patent Act*

Constitutional avoidance is a canon that essentially acts as a tiebreaker to limit the risk of unconstitutional laws and was fully discussed in Appellant's

Opening Brief. (Opening Br. at 39-41.) A constitutional purpose is therefore also relevant to avoid the very litigations that arose in the cases cited by the USPTO. Instead of addressing Appellant's actual argument, the USPTO's counterargument is predicated on first assuming their interpretation of the "plain language" of the Act is correct.[4] Thus, taking that as a given, they argue that the Patent and Copyright Clause cannot be used to change the law that Congress wrote, but again, this puts the cart before the horse.

Having misstated Thaler's argument once more, the USPTO cites to inapt cases. Neither *Eldred* nor *Figueroa* involve constitutional avoidance, but rather attempts to use the Constitution to undo clear, unambiguous acts of Congress requiring no interpretation. In *Eldred v. Ashcroft*, the Court considered whether an extension of copyright was constitutional. 537 U.S. 186, 205; 208 (2003). This has nothing to do with the case at bar, because there was no statutory interpretation at issue, the question was simply the constitutionality of a clear and simple extension. *Id*. Likewise, in *Figueroa v. United States,* Congressional

[4] The USPTO refers to its "comprehensive report," regarding the impact of considering AIs as inventors. Critically, this report came *after* the USPTO denied Thaler's applications. In addition, similar consultations with similar submissions have generated quite different conclusions. E.g., Consultation outcome. Government response to call for views on artificial intelligence and intellectual property. Updated 23 March 2021 https://www.gov.uk/government/consultations/artificial-intelligence-and-intellectual-property-call-for-views/government-response-to-call-for-views-on-artificial-intelligence-and-intellectual-property ("In relation to patents, many respondents felt that current conditions to establish the inventor may act as a barrier to innovation as the use of AI systems increases. Some argued that inventorship criteria may impact patent availability, with less incentive to invest in AI research and less transparency in the innovation process. There was general agreement that patents have an important role to protect and support AI innovation.").

action diverting patent fees to non-patent purposes was challenged. 466 F.3d 1023, 1031-32 Once again, interpretation was not at issue, but rather direct Congressional action. *Id*.

The USPTO repeats this mistake when relying on *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989). The USPTO draws the wrong principle from the case, as it does not stand for the Supreme Court's skepticism toward the Patent and Copyright Clause limiting Congress. Instead, the case concerns state versus federal action and clarifies that Congress may strike a balance between "exploit[ing] the full potential of our inventive resources and the . . . incentive to deploy those resources," *Id*. at 152. *Bonito Boats* concerns an "explicit" choice by Congress to not extend a specific "protection to industrial designs." *Id*. at 167.

However, the present case does not seek to override a particular Congressionally mandated balance. USPTO instead seeks to prohibit an entire category of inventive activity from receiving protection without any explicit evidence of Congressional support. Not only has USPTO never provided any support for Congress desiring to prohibit patents on AI-Generated Inventions, they have never once posited a single suggestion as to how prohibiting protection could promote innovation. This makes barring patents on AI-Generated Inventions arbitrary and capricious rather than a reasoned, explicit congressional scheme. The bottom line is *Bonito Boats* agrees that the need for innovation *does* limit Congress, and, while the Court may not second guess a scheme weighed out to support this innovation, there does need to be such a scheme, which the USPTO has never shown.

Simply put, the USPTO's cases and arguments never address Thaler's argument as to purposive interpretation of the Patent Act, and they never address the application of the constitutional avoidance canon in statutory interpretation, which should be used to avoid *potentially* unconstitutional reading of the statute.[5] Progress is served by broad construction of inventorship, as has been previously discussed in *Diamond* to achieve the statutory goal of promoting 'the Progress of Science and the useful Arts'. *Diamond v. Chakrabarty*, 447 U.S. at 315. Applying this principle, the Court held that a categorical rule denying patent protection for "inventions in areas not contemplated by Congress . . . would frustrate the purposes of the patent law." *Id*. at 315. There is no need to apply the Constitution to overturn a statute when the two can clearly be read in harmony.

Likewise, the reference to foreign courts is based on elucidating a shared statutory purpose, as Thaler does not suggest that the statutory interpretation of the language of foreign courts can be directly applied. But given that the language is not unambiguous, the discussion as to the reasonable interpretation of the Patent Act given a shared purpose toward innovation remains valid. It simply points to the fact that the USPTO did not address Thaler's arguments, choosing instead to impugn numerous strawmen.

---

[5] As previously noted, the interpretation of the Patent Act meriting Supreme Court review as to constitutionality, regardless of the outcome, is itself in clear violation of the Constitutional avoidance canon, which requires that the statute be interpreted in a way that is "fairly possible" to avoid the mere question simply when there is "serious doubt" about constitutionality. *Veterans4You LLC v. United States*, 985 F.3d 850, 860-61 (Fed. Cir. 2021) (citations omitted).

### C. <u>The USPTO Is Not Entitled to Skidmore Deference As It Has Not Maintained a Interpretative View of Language It Maintains Is Plain</u>

Appellee does not disagree with the standard to obtain Skidmore deference, but the parties disagree as to how much consideration the USPTO showed in denying DABUS' Applications. The USPTO argues that it is entitled to Skidmore deference because it claims it issued a well-reasoned opinion that specifically addressed the arguments that Thaler raised. This is not accurate. USPTO rendered a conclusory order based on a narrow and prohibited reading of the statute.

As discussed in the Appellant's Opening Brief, the USPTO's first argument was to say that reference to the pronoun "whoever" justified an inventor being a human. (Appx347, Appx598.) The USPTO also relied on similar argument as to the use of "himself" and "herself" with regard to the with regard to oaths. *Id*. This was the entire "plain reading" argument in the USPTO's decision. Now, in the USPTO's responsive brief, it has jettisoned this argument in footnote 4, arguing that the pronouns are of "far less interpretative value." (Opening Br. at 23.) Yet, despite taking a different approach to argue for plain language, the USPTO is arguing this analysis was extensive enough for Skidmore deference.

Inconsistency weighs against *Skidmore* deference. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later

pronouncements, and all those factors which give it power to persuade.") Here, the USPTO is not even consistent within one controversy or its own opposition brief, much less earlier and later pronouncements, which is especially important when plain language is the primary argument raised by the USPTO. It appears instead that the USPTO without much consideration determined the plain language stated its conclusion, then it found alternate methods of reading the same language to create a new argument with the same conclusion.

## III. CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's decision and remand the case for further proceedings.

Dated: February 24, 2022

Respectfully Submitted,

_____/s/ Ryan Abbott____
Ryan Abbott

Ryan Abbott, Esq.
Brown, Neri, Smith & Khan, LLP
11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
Phone: (310) 593-9890
Fax: (310) 593-9980

*Attorney for Plaintiff-Appellant*

CERTIFICATE OF SERVICE

I hereby certify that I served a copy of this brief on counsel of record for Appellees on February 24, 2022 by CM/ECF.

Dated: February 24, 2022

Los Angeles, California

_____/s/ Ryan Abbott___

Ryan Abbott

Ryan Abbott, Esq.
Brown, Neri, Smith & Khan, LLP
11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
Phone: (310) 593-9890
Fax: (310) 593-9980

*Attorneys for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2021-2347

**Short Case Caption:** Thaler v. Hirshfeld

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 4,962 words.

☐ the filing has been prepared using a monospaced typeface and includes ________ lines of text.

☐ the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 02/24/2022

Signature: [signature]

Name: Ryan Abbott